UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

JERMAINE M. SMITH                                                               PLAINTIFF

v.                                                 CIVIL ACTION NO. 1:14-CV-P37-GNS

JACKIE STRODE et al.                                           DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Before the Court is the motion for summary judgment filed by Defendants Jackie Strode and Pat Watt[1] (DN 23). Plaintiff filed a combined response to Defendants' motion for summary judgment and cross-motion for summary judgment favorable to Plaintiff (DN 41).[2] Defendants filed a reply (DN 42) to Plaintiff's response. The matter being ripe, the Defendants' motion for summary judgment will be granted, and Plaintiff's cross-motion for summary judgment will be denied for the reasons that follow.

**I.**

Plaintiff, who was an inmate at the Warren County Regional Jail (WCRJ) at the pertinent time, filed a complaint naming in their official capacities WCRJ employees Watt and Strode as Defendants. In his complaint, Plaintiff alleged that $65 was taken out of his inmate account. When he grieved the deduction of this money, he was told that "they can take my money if they think another inmate had the money placed on my account." He stated that he tried to explain that the money was a gift to him; that the "Rules and Rights" that he signed when he entered the facility did not say anything about taking "any money except for fees"; and that, except for

---

[1] Although the complaint spelled this Defendant's first name as "Patt," it appears that the correct spelling is "Pat."
[2] Plaintiff also filed a motion to deny the summary-judgment motion (DN 32), arguing that one of the main issues is whether the policy was posted for inmates to see. Attached thereto is Plaintiff's affidavit that he never saw this policy posted and that he needed more time to gather information regarding this issue. Because the Court finds that Defendants are entitled to summary judgment because Plaintiff does not have a property interest in the funds which were confiscated, it is not necessary to rule on this motion before deciding whether Defendants are entitled to summary judgment.

medical fees, he does not owe any fees. He stated, "I was told by Patt Watt that she has the power given to her by Jackie Strode that she can take money if she suspects a 'scam.'" He stated further that Defendant Watt told him that it was a "jail policy that Jackie Strode told her was in place. No such policy is available for inmates to view. . . . If it is a rule/policy that is expected to be adhered to by me/inmates then that should be printed, posted, or at the very least explained to inmates."

The Court allowed Plaintiff to amend his complaint to clarify that he was suing Defendants Strode and Watt in their individual capacities. On initial review pursuant to 28 U.S.C. § 1915A, the Court allowed to continue Plaintiff's claims against Defendants Strode and Watt in their individual and official capacities relating to the policy of taking money out of his account without due process based on suspicion of a scam.

## II.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he or she has the burden of proof. *Id.* Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id.* If the record taken as a whole could not lead the trier of fact to find for the

nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Defendants argue that Plaintiff does not have a property interest to sustain a claim under the Fourteenth Amendment because the evidence establishes that the confiscated $65 was money intended for Plaintiff's cellmate, Dominique Wortham.[3] Defendants also argue that Plaintiff has failed to allege that state remedies, such as a state-law claim for conversion, are inadequate. Defendants further argue that, even assuming that Plaintiff had a property interest in the money and that he had met his burden of showing that state remedies were inadequate, the seizure was not in violation of his due-process rights because the necessity for quick action followed by an adequate post-deprivation remedy is sufficient. Because the Court finds Defendants' argument that Plaintiff lacks a property interest in the $65 persuasive, it will not consider Defendants' alternative arguments.

The affidavit of Defendant Watt attached to Defendants' motion for summary judgment avers as follows:

> [It is] WCRJ's policy to confiscate any deposit made into an inmate's account that appears to be a scam to avoid fees. This includes a deposit into an inmate's account, who owes no fees, when the money was deposited by an individual who previously deposited money into another inmate's account, who owes jail fees, and the individual has no previous or apparent relationship with the inmate in whose account he or she deposited the money.

Defendant Watt also avers that "[a]ll deposits into inmate accounts are reviewed by WCRJ to identify irregularities and potential scams. If an irregularity or potential scam is identified, staff notifies Affiant." She further avers that "[o]n January 9, 2014, Dawn Duckett informed Affiant of a $65.00 deposit made by Shamkeria Lane on January 8, 2014 into [Plaintff's] account, which

---

[3] Defendants also argue that the Eighth Amendment does not apply. As the Court explained in its screening Memorandum Opinion and Order, the Eighth Amendment does not protect a prisoner from the type of deprivation of property alleged here; such claim falls under the ambit of the Fourteenth Amendment.

she suspected to be a scam. Duckett informed Affiant that Lane's address was the same as Smith's cellmate, Inmate Dominique Wortham." Affiant also determined that the billing address for Lane's credit card was the same as the address listed for Wortham and "that Smith had never received a deposit from Lane and that no previous deposits had been made into Smith's inmate account via the online Touchpay system." That affidavit continues, "Based on Affiant's investigation, Affiant concluded that the deposit was a scam to avoid jail fees in violation of WCRJ's policy. As a result, the deposit was confiscated from Smith's account and applied to Wortham's outstanding account balance." Finally, the affidavit provides: "On January 10, 2014, Affiant received a request from Smith to speak with Affiant . . . While speaking with Smith, Affiant explained to Smith that Affiant suspected the deposit to be a scam and WCRJ policy allowed Affiant to confiscate it. Smith asked about the inmate grievance procedure of which Affiant informed him."

In an affidavit, Deputy Dustin Lee averred that he was present and overheard portions of Plaintiff's conversation with Defendant Watt over the money which was confiscated and then "observed Smith go directly into his cell to speak with Wortham," at which time he activated the speaker in Smith and Wortham's cell. Deputy Lee avers:

> Through the speaker . . ., Affiant heard Smith and Wortham discussing Smith's conversation with Chief Deputy Watt. Smith spoke to Wortham about other ways to get Wortham money while avoiding the jail fees. Affiant heard Smith tell Wortham, "they ain't gonna give that money back" and "don't worry about it, we'll figure out a different play. Maybe we can do like $40 in phone cards or something."

An exhibit attached to Defendants' motion shows that Ms. Lane subsequently did make two deposits into Wortham's account, $25 on March 2014, and $60 on April 2, 2014, after the $65 was confiscated. According to Defendants, and undisputed by Plaintiff, Ms. Lane did not make any other deposits into Plaintiff's account.

4

In his response and cross-motion for summary judgment (DN 41), Plaintiff argues that Defendants have only offered pure speculation that Lane sent that money to Plaintiff as part of a scam because the money was really intended for Wortham. He states, "The plaintiff communicated with Lane via U.S. Mail and Lane sent that $65.00 solely for the Plaintiff. No rule is posted that says anything about any person that has any relations or prior dealings with another inmate can't communicate with and send money to another inmate." He also states, "It is a case that Lane sent money to the Plaintiff and the Defendants have only offered speculation as to why their theory is that my money was intended for somebody else, when it wasn't." He attaches an affidavit from another inmate, Ryan Talley, who avers that Talley and another inmate, Damian Clark, both received money orders from Fantasia Cole, another inmate's sister, and that neither he nor Clark had their money confiscated. However, that affidavit does not state whether either the affiant or the other inmate owed any fees to WCRJ at the time the money was deposited.

In his unverified cross-motion for summary judgment, Plaintiff offers several reasons why Deputy Lee's reporting of the conversation he overheard in Plaintiff's cell may not be accurate. He states that Deputy Lee's affidavit does not mention that there were six people housed in that cell at that time, that Deputy Lee cannot see into the entire "A-3" cell; that the speakers in the pod are "muffled and nearly impossible to tell exactly who is speaking"; and that an inmate "can move amongst the inner 3 cells." Plaintiff asserts that, when he went back to the cell, several inmates asked him about the money. Plaintiff also takes issue with Deputy Lee's statement that he overheard Plaintiff and Wortham talk about other ways to get Wortham money while avoiding jail fees, arguing that if that were true, Deputy Lee should be able to give a detailed account of what he heard rather than just offering such a broad statement.

The undisputed facts in this matter are as follows. Plaintiff's cellmate Wortham is a county inmate charged *per diem* incarceration fees in accordance with Kentucky law and WCRJ policy. At the pertinent time, Wortham owed WCRJ $3,628.46. Under the WCRJ policy, one-half of any money deposited to Wortham's account would be credited to the money owed to WCRJ. Plaintiff did not owe the WCRJ any fees. When Wortham's sister deposited $65 into Plaintiff's account, it was removed by Defendant Watt per WCRJ policy regarding scam deposits. Plaintiff spoke to Defendant Watt about the removal of the $65. Thus, the only genuine issue of material fact which is in dispute in this case is whether the $65 deposited into Plaintiff's account by Ms. Lane was in fact intended for Ms. Lane's brother, Plaintiff's cellmate.

To establish a Fourteenth Amendment due-process claim regarding the $65 removed from his account, Plaintiff must have a liberty or property interest in the property at issue. *Sickles v. Campbell Cnty., Ky.*, 501 F.3d 726, 730 (6th Cir. 2007); *see also Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005). Defendants argue that the evidence establishes that the $65 confiscated from Plaintiff's account was intended for Wortham. It was deposited in Plaintiff's account under an agreement between Plaintiff and Wortham in which Plaintiff was to hold the money in his account so that the money would not be confiscated for Wortham's prison fees. Defendants argue that the nature of the agreement created an implied-in-fact bailment and that Plaintiff as the bailee had only a possessory interest and not a property interest in the $65.

Under Kentucky law, such an implied-in-fact bailment exists where there is an understanding between the parties and the acts or conduct of the party sought to be bound provides a substantive foundation for the implied bailment contract. *See Jones v. Hanna*, 814 S.W.2d 287, 289 (Ky. App. 1991) ("A 'bailment' . . . imports the delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that

the trust shall be faithfully executed, and the property returned or duly accounted for when the special purpose is accomplished . . . ." (internal quotation marks and citation omitted)). In Kentucky, money may be the subject of a bailment. *Hargis v. Spencer*, 71 S.W.2d 666, 667 (1934). A bailee lacks any property interest in the money that is subject to bailment and instead has only a possessory interest in the property entrusted to him. *In re Computrex, Inc.*, 403 F.3d 807, 812 (6th Cir. 2005) (discussing bailment under Kentucky law).

Here, the evidence establishes that the $65 was deposited in Plaintiff's account to be held in trust for Wortham. Plaintiff offers no explanation as to any possible motivation why Wortham's sister would suddenly send Plaintiff $65. Moreover, Plaintiff does not offer a statement from Ms. Lane that she intended the money for him rather than her brother. Nor does he offer any explanation as to why he does not provide such a statement.

With regard to the conversation which Deputy Lee avers that he overheard, although Plaintiff offers some reasons why that affidavit might not be accurately attributing the conversation in question to him, Plaintiff does not state that he did not have such a conversation. Nor does Plaintiff offer his own affidavit in support of his case, and the cross-motion for summary judgment in which he makes these arguments (DN 41) is not sworn. The Sixth Circuit has consistently held that "a court may not consider unsworn statements when ruling on a motion for summary judgment," *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-69 (6th Cir. 1991) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158 n.17 (1970)), and, thus, Plaintiff's statements in his cross-motion for summary-judgment are not competent evidence for this Court to consider.

Because the Court finds that Plaintiff has not established a property interest in the money, Plaintiff's due-process claim fails as a matter of law. The Court will not consider the alternative arguments put forth by the parties.

### III.

**IT IS ORDERED** that Defendants' motion for summary judgment (DN 23) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's cross-motion for summary judgment (DN 41) is **DENIED**.

A separate Judgment will be entered dismissing this case.

Date: September 3, 2015

**Greg N. Stivers, Judge**
**United States District Court**

cc: Plaintiff, *pro se*
Counsel of record
4416.009